UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ROBERT BROWN,                          )
                                       )
                    Plaintiff          )
                                       )
          vs.                          )          CAUSE NO. 3:02-CV-572 RM
                                       )
MICHIGAN CITY, INDIANA,                )
                                       )
                    Defendant          )

OPINION and ORDER

Robert Brown has moved for partial summary judgment on his claims that the actions of officials of Michigan City, Indiana, violated his procedural and substantive due process rights guaranteed by the Fourteenth Amendment to the United States Constitution, when they banned him from entering the City's parks. He seeks a permanent injunction allowing him to once again lawfully enter and use the parks and asks that the matter be set for hearing on the issues of damages. The City has filed its own summary judgment motion, arguing that Mr. Brown's due process rights were not violated and he, therefore, is not entitled to the relief he seeks. For the reasons that follow, the court denies Mr. Brown's motion and grants the City's motion.

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. Ritchie v. Glidden Co., 242 F.3d 713, 720 (7th Cir. 2001). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in his favor. Lawrence v. Kenosha County, 391 F.3d 837, 842 (7th Cir. 2004); see also Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events'" (quoting Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

The existence of cross-summary judgment motions doesn't imply that there are no genuine issues of material fact: "[p]arties have different burdens of proof with respect to particular facts; different legal theories will have an effect on which facts are material; and the process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may highlight the point that neither side has enough to prevail without a trial." <u>R.J. Corman Derailment Servs., LLC v. International Union of Operating Engineers, Local 150</u>, 335 F.3d 643, 647-648 (7th Cir. 2003). The court isn't required to grant summary judgment for either side when faced with cross-motions. "Rather, the court is to evaluate each motion on its merits, resolving factual uncertainties and drawing all reasonable inferences against the movant." <u>Crespo v. Unum Life Ins. Co. of America</u>, 294 F. Supp.2d 980, 991 (N.D. Ind. 2003) (citations omitted).

FACTS

Robert Brown, a Michigan City resident, has been going to the City's Washington Park for years and, since his wife's death in 1988, has been going there on a daily basis to drink coffee, listen to the radio, and smoke cigarettes. Mr. Brown reports that he drives his Dodge van to Washington Park, located on the shore of Lake Michigan, parks his van in a position to observe the beach area of the park, and doesn't leave his vehicle. Some days, Mr. Brown enters and exists the park more than once, using his parking pass, which permits free park entry. Mr. Brown says that on occasion he has fished, launched his boat from a public

access area, gone on a picnic with his daughter and her family, and attended an in-water boat show at Washington Park.

In early July 2002, LaPorte, Indiana, Recreation Director Karl Swihart told Michigan City Recreation Director Darrell Garbacik that lifeguards at LaPorte's Stone Lake park had observed Mr. Brown parking his van by the lake on a regular basis and looking at beach patrons through binoculars. Mr. Swihart said he notified LaPorte City Police, and their investigation revealed that Mr. Brown was a convicted child molester. Mr. Swihart also provided Mr. Garbacik with a copy of a report from LaPorte Police Officer Paul Brettin, who indicated he had questioned Mr. Brown about his activities at Stone Lake and believed that because of the continued police presence around the lake, Mr. Brown left the beach area in LaPorte.

Mr. Garbacik contacted Michigan City police and forwarded the information to the Michigan City Park Board attorney and Washington Park lifeguards and staff. Mr. Garbacik also directed staff at the gatehouse entrance to Washington Park to keep a log of Mr. Brown's visits to the park. Washington Park staff informed Michigan City police that Mr. Brown entered the park on a daily basis, sometimes more than once a day, and they had observed him driving slowly past the children's day camp area of the park and looking at people through his binoculars for hours each day.

Mr. Brown reports that on a number of occasions in mid-July while he was sitting in his van in Washington Park, Michigan City police officers approached

4

him and suggested that he leave the park area. Mr. Brown says that on one such occasion, officers informed him of his obligation to register as a convicted sex offender with the Michigan City Police Department based on his 1994 child molesting conviction. Mr. Brown then registered with City police; he says he previously believed that his registration with the LaPorte County Sheriff's Department was sufficient. In late July, Michigan City police and a deputy city attorney approached Mr. Brown, took his parking pass from him, and told him he would be arrested if he entered the park again.

On July 31, Mr. Brown received a letter, signed by the Superintendent of Parks and hand-delivered to him by a Michigan City police officer, informing him that the banning of his presence from the City's parks would "be presented to the Michigan City Parks and Recreation Board, Thursday, August 1st at 6:00 in the 1st floor of the Park Office." Mr. Brown says he didn't attend the meeting at the Park Office, which is located on the grounds of Washington Park, because he couldn't secure written assurance from City officials that he wouldn't be arrested if entered the park to go to the meeting.

The Michigan City Parks and Recreation Board met on August 1 and adopted Resolution 548, entitled "A Resolution Prohibiting The Use Of Park Department Properties By An Individual Having A Child Molesting History." Resolution 548 states that the Parks and Recreation Board and the Michigan City Parks and Recreation Department

5

are by law responsible for the safety of all persons using the Park Department facilities or participating in Park Department programs, and

WHEREAS, the Indiana State Legislature and the Indiana Courts have continuously recognized that such responsible parties must, at times, put forth extraordinary effort and vigilance to fulfill their duties when it comes to the protection of the safety of children, and

WHEREAS, this Department sponsors numerous programs and events particularly designed for the participation of children, whose parents or guardians transport them into the care and custody of this Department and its staff with the intention and the expectation that said children will be protected from harm of any kind during the period of such care and custody, and

WHEREAS, it was brought to the attention of this Board by the Department staff and the Michigan City Police Department that during the period of a recent summer day camp program for children, conducted at Washington Park, an individual, namely, Robert E. Brown of 401 Pearl Street, Michigan City, who was recognized by members of the Michigan City Police force as a convicted child molester, was observed by the Police and the Department staff frequenting Washington Park in [a] recreational/camping vehicle, while having a set of binoculars and a camera in his possession,

WHEREAS, this Board has determined that in order to discharge its responsibilities of child protection and safety, it is necessary to designate all properties and programs under the jurisdiction of this Department to be OFF LIMITS to any person who has been convicted of child molesting under Indiana Code 35-42-4-3, or convicted of any other sex crime in which the victim is a child under the age of 18 years, and to ban such person from all Michigan City Parks and Recreation Department properties indefinitely.

NOW THEREFORE, BE IT RESOLVED BY THE MICHIGAN CITY PARKS AND RECREATION BOARD AS FOLLOWS:

1. That ROBERT E. BROWN, of 401 Pearl Street, Michigan City, Indiana is hereby BANNED from all properties or programs operated under the jurisdiction of the Michigan City Department of Parks and Recreation and that in the event said individual is found upon any such property, he shall be considered a trespasser, and shall be removed forthwith, or be subject to arrest for failure to depart the premises.

2. That all properties and programs operated under the jurisdiction of this Department are hereby declared OFF LIMITS to any person who has been convicted of child molesting under Indiana

Code 35-42-4-3, or convicted or any other sex crime in which the victim is a child under the age of 18 years, and in the event any such individual is identified and found upon any such property, he shall be considered a trespasser, and shall be ordered to remove himself forthwith, or be subject to arrest for failure to depart the premises. ***

Amd. Compl., Attachment A.

Mr. Brown filed a class action complaint in this court on August 13 seeking declaratory and injunction relief on behalf of himself and those similarly situated based on the passage of Resolution 548. After the City received Mr. Brown's complaint, the Michigan City Parks and Recreation Board met in special session on August 29 and, following discussion, passed Resolution 552, which was made applicable to Mr. Brown only—the language relating to the banning from the parks of "any person" convicted of child molesting or a crime against a child was deleted.

The first three paragraphs of Resolution 552 are identical to those in Resolution 548; the remaining paragraphs of Resolution 552 read as follows:

WHEREAS, it was brought to the attention of this Board by the Department staff and the Michigan City Police Department that during the period of a recent summer day camp program for children, conducted at Washington Park, an individual, namely, Robert E. Brown of 401 Pearl Street, Michigan City, who was recognized by members of the Michigan City Police force as a convicted child molester, was observed by the Police and the Department staff repeatedly frequenting Washington Park in [a] recreational/camping vehicle, while having a set of binoculars and a camera in his possession, and cruising the vicinity of the day camp children, and

WHEREAS, this Board has determined that in order to discharge its responsibilities of child protection and safety, it is necessary to designate all properties and programs under the jurisdiction of this Department to be OFF LIMITS to the said Mr. Robert E. Brown who has been convicted of child molesting under Indiana Code 35-42-4-3, and whose behavior in Washington Park is deemed by this Board to constitute a threat to the safety of children,

and to ban such person from all Michigan City Parks and Recreation Department properties indefinitely.

NOW THEREFORE, BE IT RESOLVED BY THE MICHIGAN CITY PARKS AND RECREATION BOARD AS FOLLOWS:

1. That ROBERT E. BROWN, of 401 Pearl Street, Michigan City, Indiana is hereby BANNED from all properties or programs operated under the jurisdiction of the Michigan City Department of Parks and Recreation and that in the event said individual is found upon any such property, he shall be considered a trespasser, and shall be removed forthwith, or be subject to arrest for failure to depart the premises.

2. That all properties and programs operated under the jurisdiction of this Department are hereby declared OFF LIMITS to the said Mr. Brown who has been convicted of child molesting under Indiana Code 35-42-4-3, and whose observed behavior in Washington Park is deemed by this Board to constitute a threat to the safety of children, and in the event any said individual is identified and found upon any such property, he shall be considered a trespasser and shall be ordered to remove himself forthwith, or be subject to arrest for failure to depart the premises. ***

Amd. Compl., Attachment B.

Mr. Brown filed an amended complaint based on the passage of Resolution 552, naming himself as the sole plaintiff. In his amended complaint, Mr. Brown claims the City didn't afford him a reasonable opportunity to be heard in violation of his procedural due process rights, and the City's ban of him from its parks was arbitrary, irrational, and violative of his substantive due process rights.[1] He seeks a declaratory judgment that Resolutions 548 and 552 are unconstitutional, a

---

[1] Mr. Brown's amended complaint also contained claims that Resolutions 548 and 552 constituted "an unconstitutional violation of the *ex post facto* clause of the United States Constitution, art. I, § 10, cl. I, and/or the double jeopardy clause of the fifth amendment to the United States Constitution as incorporated into the Fourteenth Amendment." Amd. Compl., ¶ 34. Mr. Brown withdrew those two claims in his response to the City's summary judgment motion, so the court won't address the City's arguments for summary judgment on those claims.

permanent injunction enjoining the City from enforcing Resolution 552, and an award of compensatory damages, attorney fees, and costs.

PROCEDURAL DUE PROCESS

Mr. Brown claims his procedural due process rights were violated when Park Board officials denied him a meaningful opportunity to be heard before the City's confiscation of his parking pass and termination of his right to enter Michigan City parks. To prevail on a procedural due process claim, Mr. Brown must show that he was deprived of a constitutionally protected property or liberty interest and that the deprivation occurred without due process of law. Zinermon v. Burch, 494 U.S. 113, 125 (1990); Lekas v. Briley, 405 F.3d 602, 607 (7th Cir. 2005).

A.  Protected Interests

Mr. Brown maintains he possessed both property and liberty interests that the City violated. He says his resident parking pass and his ability, like that of other members of the public, to enter and use the City's parks amounted to an "understanding" or entitlement that created a property interest. Mr. Brown also claims that the City's labeling him a threat to children (an injury to his reputation) and banning him from the parks (an alteration of his status) implicated a liberty interest.

9

*Property Interest*

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Board of Regents v. Roth, 408 U.S. 564, 577 (1972). Mr. Brown claims a property interest based on two entitlements: first, he explains that Michigan City residents are given the opportunity to obtain a parking pass that allows them to enter the parking area of Washington Park for free. He maintains this "understanding" gives rise to an entitlement. Mr. Brown also claims a property interest in entering the parks: the City parks' availability for use by the public represents an entitlement. He claims those entitlements amount to property interests deserving of due process protection.

"The range of interests protected by procedural due process is not infinite." Ingraham v. Wright, 430 U.S. 651, 672 (1977). A protected property interest generally must be more than a *de minimis* interest. *See* Omosegbon v. Wells, 335 F.3d 668, 674 (7th Cir. 2003).That Mr. Brown lost his parking pass and was banned from Michigan City parks doesn't mean he can't enter and enjoy public parks in other locales. *See* Freeman v. Sports Car Club of America, Inc., 51 F.3d 1358, 1362 (7th Cir. 1995) ("revocation of racing license from one specific organization did not involve "property right" where plaintiff could otherwise enjoy hobby through other organizations); Glassman v. Stern, No. 98-CIV-5142, 1998 WL 556034, *11 (W.D.N.Y. 1998) (no property interest in "the ability to play at one

municipal tennis center as opposed to another"); <u>Pai 'Ohana v. United States</u>, 875 F. Supp. 680, 699 (D. Haw. 1995) ("special use permits create no vested property rights"). Mr. Brown hasn't cited, nor has the court found, any authority to support his claim of a constitutionally protected property interest in a parking pass or his ability to enter public parks in Michigan City.

### Liberty Interest

Mr. Brown claims a liberty interest based on damage to his reputation—being accused of engaging in threatening behavior towards children. However, "mere defamation by the government does not deprive a person of liberty protected by the Fourteenth Amendment . . . . Rather, it is only the 'alteration of legal status,' such a governmental deprivation of a right previously held, which, combined with the injury resulting from the defamation, justifies the invocation of the procedural safeguards." <u>Dupuy v. Samuels</u>, 397 F.3d 493, 503 (7th Cir. 2005) (*quoting* <u>Paul v. Davis</u>, 424 U.S. 693, 708-709 (1976)). Mr. Brown claims he can meet the "stigma plus" test of <u>Paul v. Davis</u> because, in addition to damaging his reputation, the City's action in passing Resolutions 548 and 552 resulted in an alteration of a right or status, specifically his ability to enter Michigan City parks.

For today's purposes, the court assumes that the labeling of Mr. Brown as a threat to children may have resulted in damage to his reputation. *See* <u>Dupuy v. Samuels</u>, 397 F.3d at 513-514 ("[L]abeling someone as a child abuser calls into

question that person's 'good name, reputation, honor, or integrity.'"). The "plus" requirement remains: if the City only defamed Mr. Brown without depriving him of any right or status recognized under state law, then his injury doesn't rise to the level of a constitutional deprivation and his procedural due process claim must fail. The key, then, is the alteration of a legal status and what qualifies as "a right or status previously recognized by state law." Paul v. Davis, 424 U.S. 693, 711 (1976).

The alteration of a legal status has been recognized in many contexts, *see, e.g.,* Goss v. Lopez, 419 U.S. 565 (1975) (right to attend school); Board of Regents v. Roth, 408 U.S. 564 (1972) (right to employment); Morrissey v. Brewer, 408 U.S. 471 (1972) (right to remain at liberty as long as parole conditions are met); Wisconsin v. Constantineau, 400 U.S. 433 (1971) (right to purchase alcohol); Townsend v. Vallas, 265 F.3d 661 (7th Cir. 2001) (right to pursue employment in chosen field), while other courts have rejected an alleged legal right as a "plus" factor, *see, e.g.,* Behrens v. Regier, No. 04-14820, 2005 WL 2085656 (11th Cir. Aug. 31, 2005) (because prospective adoptive parent had no right under Florida law to adopt a child, "plus" factor of stigma-plus test not satisfied); Avello v. Hammons, 963 F. Supp. 262, 267 (S.D.N.Y. 1997) (no right to obtain or maintain credit recognized under state law).

In yet another context, the court in Green v. Transportation Security Adm., 351 F. Supp. 2d 1119 (W.D. Wash. 2005), undertook a stigma-plus analysis of the plaintiffs' claims relating to their inclusion on the government's No-Fly List. The

court agreed the plaintiffs had been stigmatized by statements made by government officials, but disagreed with the plaintiffs' claim that their status had been altered "because they are no longer able to travel like other airline passengers." 351 F. Supp. 2d at 1130. The court concluded that while the plaintiffs had "a right to travel throughout the United States uninhibited by statutes, rules, and regulations that unreasonably burden or restrict movement, it is also true that 'burdens on a single mode of transportation do not implicate the right of interstate travel.' Thus, plaintiffs do not have a right to travel without any impediments whatsoever." *Id.* (*quoting* Miller v. Reed, 176 F.3d 1202, 1205 (9th Cir. 1999)).

Mr. Brown's case is analogous to Green in that the burden on his right to enter Michigan City's parks (like the right to travel via the airways) doesn't impede his ability to enter and use other public places in Michigan City or enter and enjoy public parks in other locales (like alternative travel by train, automobile, bus, etc.). Mr. Brown hasn't cited an Indiana law establishing a right to enter Michigan City parks or cited to any case law supporting his claim of such an entitlement. The court can't agree with Mr. Brown that his ban from the Michigan City parks is an "alteration of a legal status," and the injury to his reputation is insufficient to support his claim that he was deprived of a protected liberty interest.

The court, therefore, concludes that Mr. Brown hasn't shown the loss of a recognized property or liberty interest that demanded due process protections. But even assuming Mr. Brown had a property or liberty interest in his parking pass

13

and/or his right to enter the City's parks, he received all the process that was due, as discussed in the following section.

## B. Process Due

Procedural due process includes the right to notice of the proposed action, a meaningful opportunity to be heard, and a fair and impartial process appropriate to the nature of the case. LaChance v. Erickson, 522 U.S. 262, 266 (1998); Doyle v. Camelot Care Centers, Inc., 305 F.3d 603, 617 (7th Cir. 2002). According to Mr. Brown, his due process rights were violated in the following particulars: the notice he received relating to the August 1 meeting was untimely and insufficient; he received no notice of the August 29 meeting; his parking pass and ability to enter the City's parks were stripped from him without a prior hearing or opportunity to be heard; and the minutes of the Park Board meetings "reflect a predetermined decision," which establishes that the meetings were shams.

### Notice

Due process requires that the notice provided to Mr. Brown must have been "reasonably calculated, under all the circumstances, to apprise [him] of the pendency of the action and afford [him] an opportunity to present [his] objections." Lobzun v. United States, No. 04-3894, 2005 WL 2106154, * 3 (7th Cir. Sept. 2, 2005) (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314

(1950)). "When it comes to notice, due process requires reasonable efforts at notice." Towers v. City of Chicago, 173 F.3d 619, 628 (7th Cir. 1999). Mr. Brown admits he received notice of the Park Board meeting, but claims that receipt on July 31 of notice of a meeting scheduled for August 1 was untimely.

While circumstances may show that a one-day notice is not sufficient, Mr. Brown hasn't set forth any circumstances to support a finding that 24-hours was insufficient: he hasn't alleged that he couldn't contact witnesses or gather evidence he needed for the meeting; he hasn't said that work or other obligations prevented him from attending the meeting on the scheduled date and time; he hasn't said he needed more time to hire an attorney to accompany him to the meeting; he hasn't argued that his attorney was unavailable to attend the meeting on the day in question. Mr. Brown wasn't faced with a loss of employment, as in Brady v. Gebbie, 859 F.2d 1543 (9th Cir. 1988), with having to defend his citizenship, as in In re Petition for Naturalization of Mendiola, 647 F. Supp. 839 (S.D.N.Y. 1986), or with preparing for a court hearing to set aside a default judgment, a hearing at which he was planning to present a physician as a witness on his behalf, as in Swallow v. United States, 380 F.2d 710 (10th Cir. 1967). Mr. Brown's conclusory statement that he didn't have time to properly prepare doesn't support a finding that a one-day notice was unreasonable under the circumstances presented in this case. See Staples v. City of Milwaukee, 142 F.3d 383, 385-386 (7th Cir. 1998) ("We have held before that due process requires the notice of the charges and the hearing to be given in advance of the hearing. This

15

does not necessarily mean days or weeks in advance, but even a few hours' warning would permit the employee to gather his thoughts and his evidence and to make an informed decision about the best way to respond to the charges." (citations omitted)).

Mr. Brown also says the notice was insufficient in that it didn't inform him that he could be heard at the meeting and didn't contain a summary of the City's evidence against him. The notice received by Mr. Brown informed him of the meeting's purpose: to address the City's ban of him from its parks. And Mr. Brown has set forth evidence in support of his motion that confirms he was aware that he could attend the meeting. *See* Pltf. Mot., Exh. 6 (Aff. of R. Sanders), ¶ 4. Due process requires that "[p]arties must be notified in advance of the precise issues to be raised in the hearing." Cosby v. Ward, 843 F.2d 967, 982 (7th Cir. 1988). Mr. Brown's notification that the Park Board would be meeting on August 1 to discuss his ban from the City's parks satisfied due process. *See* Horn v. City of Chicago, 860 F.2d 700, 705 (7th Cir. 1988) ("The language of the notices specifically referred to future actions the city might take . . . .").

### *Opportunity to be Heard*

A pre-deprivation hearing isn't required in all circumstances. "For example, where the state must of necessity act quickly, or where the degree of the deprivation is not serious and the procedures underlying the decision to effect the deprivation are adequate to address the risk of an erroneous deprivation, a post-

deprivation hearing . . . may satisfy due process." <u>Porter v. DiBlasio</u>, 93 F.3d 301, 305-306 (7th Cir. 1996) (citations omitted); *see also* <u>Veterans Legal Defense Fund v. Schwartz</u>, 330 F.3d 937, 940 (7th Cir. 2003) ("post-deprivation remedies are a constitutionally acceptable substitute for predeprivation remedies in many procedural due process cases"). The court must determine, then, whether the post-deprivation procedures and remedies afforded to Mr. Brown were an adequate substitute for a pre-deprivation hearing.

The Park Board addressed its proposed ban of Mr. Brown at a meeting on August 1, which was after Mr. Brown was advised by police that he would be arrested if he entered the parks. Although the exact date of that action isn't clear, Mr. Brown wasn't arrested or detained pending the scheduling of the meeting or the outcome of the Park Board's decision, and he hasn't alleged or argued that the City's scheduling of the meeting for August 1 wasn't sufficiently prompt or that the August 1 date amounted to an unreasonable length of time after the deprivation occurred.

After receiving the notice, Mr. Brown had a friend contact the Park Department and the City Attorney's Office seeking written assurance that he wouldn't be arrested if he attended the meeting on park property. He says that he learned through those calls that he could attend the meeting, albeit without the written guarantee he sought. Mr. Brown, though, doesn't say that during either of those calls he asked, or had his friend ask, for information about the specifics of the meeting or that another date for the meeting be scheduled.

Mr. Brown was informed that his ban from the parks was going to be discussed and he learned that he could attend the meeting. His complaint that he wasn't told that he had an opportunity to be heard doesn't establish that his due process rights were violated in this regard. *See* Horn v. City of Chicago, 860 F.2d at 705 ("Any doubts could have been resolved by contacting the Department of Revenue at the number or address listed."). Mr. Brown chose to not attend the meeting and so didn't take advantage of an opportunity to be heard.

### Fairness of Process

Mr. Brown claims that the minutes of the Parks Board meetings show that the meetings were not adversary hearings—he complains that there were no witnesses, no evidence was taken, and there was no opportunity to contest the resolutions. The court can't agree with Mr. Brown's assessment of the proceedings. The minutes of the August 1 meeting show that an open discussion was held, and questions were accepted and answered. A Resolution was presented to the Park Board for its consideration. Prior to a vote on the Resolution, Patrick Donoghue, Park Department Attorney, discussed the functions and responsibilities of the Park Board and Park Department personnel [Deft. Mot., Exh. 6, at 2], presented the evidence gathered from the LaPorte Police Department, Michigan City Police Department, and Michigan City Park Department staff relating to Mr. Brown [Deft. Mot., Exh. 6, at 2-3], and reviewed possible legal ramifications of adopting the Resolution [Deft. Mot., Exh. 6, at 3-4].

18

John Espar, Deputy City Attorney for Michigan City, discussed how the Resolution would be implemented [Deft. Mot., Exh. 6, at 6]. Numerous questions were asked and answered during the meeting [Deft. Mot., Exh. 6, at 3-6]. Resolution 548 was then adopted by unanimous vote of the Park Board [Deft. Mot., Exh. 6, at 7]. The minutes of the August 1 meeting don't support Mr. Brown's claim that the meeting was a sham. *See* Cooper v. Salazar, 196 F.3d 809, 814 (7th Cir. 1999) ("The concept of due process generally demands fewer procedural safeguards at informal administrative proceedings than during formal judicial hearings.").

With respect to the August 29 meeting, Mr. Brown says he didn't get notice of the meeting and complains that the meeting "resulted in a separate resolution and elicited additional comments about Mr. Brown which he should have been given the opportunity to meet and refute." Pltf. Mot., at 18. A review of the minutes of the August 29 meeting shows that while a new resolution was adopted, the Park Board's focus was on eliminating the portion of Resolution 548 relating to persons other than Mr. Brown. The Board didn't discuss Mr. Brown personally; no testimony or evidence about Mr. Brown was offered or solicited. *See* Deft. Mot., Exh. 8. Thus, the August 29 meeting didn't result in a violation of Mr. Brown's procedural due process rights.

Because "the precise timing and form of the procedures that the government must afford an individual hinge upon the particularities of the situation," Doyle v. Camelot Care Centers, Inc., 305 F.3d 603, 617-618 (7th Cir. 2002), determining what process is due in a particular case requires a balancing of: "[f]irst, the private

interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

*Private Interest.* The private interest here at issue—entering the City's parks —was recreational and didn't involve issues of health, welfare, employment, or the provision of essential services. *See generally* Memphis Light, Gas and Water Div. v. Craft, 436 U.S. 1, 14 n.15 (1978) (electric service customers' protected interest in uninterrupted service was one "essential to health and safety"); Goldberg v. Kelly, 397 U.S. 254, 264 (1970) (welfare payments characterized as protected interest involving "the very means by which to live"); Dupuy v. Samuels, 397 F.3d 493, 499 (7th Cir. 2005) ("plaintiffs have a serious and legitimate private interest in pursuing employment"); Chaney v. Suburban Bus Div. of Regional Transp. Authority, 52 F.3d 623, 628 (7th Cir. 1995) ("Chaney's interest in avoiding a suspension [from his job] is significant."). Mr. Brown's interest in going to the City's parks cannot be seen as significant.

*Risk of Erroneous Deprivation.* The risk of erroneous deprivation through the procedures used seems low. Even though the Park Board's August 1 meeting to adopt the ban of Mr. Brown from the parks occurred post-deprivation, most of the evidence relied upon isn't in dispute: Mr. Brown had been convicted of child

molesting, and law enforcement and park personnel witnessed and documented his daily entrances to Washington Park. Only the interpretation of the evidence is in dispute—the people tracking Mr. Brown's movements in the park considered his behavior to be suspect, while Mr. Brown says his behavior was innocent. "Assuring the safety and well-being of a child exposed to abuse or neglect often requires [government] to act promptly on the basis of meager evidence." Doyle v. Camelot Care Centers, Inc., 305 F.3d at 619. Mr. Brown also complains that the decision relating to the ban was left "to the unfettered discretion of Michigan City officials" and occurred without any written standards relating to banning people from the parks, Pltf. Resp., at 8, but Indiana law confers authority on a city's park board to oversee the operation and use of the parks. *See* IND. CODE § 36-10-3-10, -11.

*Government Interest.* The City's interest in protecting children in its parks is a compelling one. The Park Board held a meeting on August 1 to address banning Mr. Brown, a convicted child molester, from the parks, after notifying Mr. Brown of time, date, and purpose of meeting. Mr. Brown didn't attend the meeting. He didn't request that the meeting be postponed or rescheduled. He didn't ask the Park Board for additional time to prepare for the meeting. And although the fiscal and administrative burdens of holding another meeting appear small, Mr. Brown didn't ask that another meeting be convened for purposes of addressing or appealing the ban.

The record before the court shows that Mr. Brown received all the due process to which he was constitutionally entitled: notice and the opportunity to be heard. That Mr. Brown didn't take advantage of his opportunity to be heard doesn't diminish the sufficiency of that opportunity. The August meetings of the Michigan City Park Board satisfied the procedural requirements of due process, and the City is entitled to summary judgment on Mr. Brown's claim.

SUBSTANTIVE DUE PROCESS

The Due Process Clause guarantees more than just fair process; the Clause's substantive component "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" Collins v. Harker Heights, 503 U.S. 115, 125 (1992) (*quoting* Daniels v. Williams, 474 U.S. 327, 331 (1986)). While substantive due process isn't "a blanket protection against unjustifiable interferences with property," Schroeder v. City of Chicago, 927 F.2d 957, 961 (7th Cir. 1991), it serves to protect individuals against "the exercise of governmental power without reasonable justification." Tun v. Whitticker, 398 F.3d 899, 902 (7th Cir. 2005); *see also* Remer v. Burlington Area School Dist., 286 F.3d 1007, 1013 (7th Cir. 2002) ("the touchstone of due process . . . is protection of the individual against arbitrary action of government").

Substantive due process "provides heightened protection against government interference with certain fundamental rights and liberty interests,"

22

that is, "those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." Washington v. Glucksberg, 521 U.S. 702, 720-721 (1997) (citations omitted). "Fundamental liberty interests," while "never fully clarified . . . and perhaps not capable of being fully clarified, have at least been carefully refined," id. at 722, and courts should be "reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." Id. at 720 (*quoting* Collins v. Harker Heights, 503 U.S. 115, 125 (1992)).

Mr. Brown claims his ban from the City's parks violates his fundamental right to enter public spaces like city parks, as guaranteed by the Due Process Clause of the Fourteenth Amendment. However, while the liberty interest here at issue—the right to enter and use city parks—is not unimportant, it is not a fundamental right. Doe v. City of Lafayette, 377 F.3d 757, 772-773 (7th Cir. 2004) ("assuming the record would support [Mr. Doe's] contention that he is seeking a right to enter public parks simply to wander and loiter innocently, we cannot characterize that right as 'fundamental'"). Comparing Mr. Brown's asserted liberty interest with other liberty interests that have been held to be fundamental[2]

---

[2] *See, e.g.,* Troxel v. Granville, 530 U.S. 57 (2000) (reaffirming fundamental right of parent to make decisions concerning the rearing of children); Planned Parenthood of Southeastern Pa. v. Casey, 505 U.S. 833 (1992) (right to choose abortion); Cruzan v. Director, Mo. Dept. of Health, 497 U.S. 261 (1990) (right to refuse unwanted medical treatment); Santosky v. Kramer, 455 U.S. 745,

(continued...)

convinces the court that the right "to enter the parks and loiter is not on the same footing; it is not 'implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [it] were sacrificed.'" Doe v. City of Lafayette, 377 F.3d at 770 (quoting Washington v. Glucksberg, 521 U.S. 702, 721 (1997)). The City "only has deprived him of the 'right' to go the City's parks which he wishes to use for allegedly innocent, recreational purposes. That . . . right is not 'fundamental' to Mr. [Brown's] personhood." Doe v. City of Lafayette, 377 F.3d at 771.

"Unless a governmental practice encroaches on a fundamental right, substantive due process requires only that the practice be rationally related to a legitimate government interest, or alternatively phrased, that the practice be neither arbitrary nor irrational." Lee v. City of Chicago, 330 F.3d 456, 467 (7th Cir. 2003); see also Reno v. Flores, 507 U.S. 292, 305 (1993) (if right or liberty asserted is non-fundamental, there need only be a "reasonable fit" between the state interest and the means chose to advance that interest). Mr. Brown admits that the need to prevent children from being abused is compelling, but contends there is no rational connection between that interest and his ban from the City's parks. Mr. Brown maintains that because he hasn't engaged in conduct that could

---

[2](...continued)

753 (1982) (discussing "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child"); Loving v. Virginia, 388 U.S. 1 (1967) (right to marry); Eisenstadt v. Baird, 405 U.S. 438 (1972) (right of individual to make decision of whether to have a child); Griswold v. Connecticut, 381 U.S. 479 (1965) (right of marital privacy); Rochin v. California, 342 U.S. 165 (1952) (right to bodily integrity); Prince v. Massachusetts, 321 U.S. 158 (1944) (right of parents in the custody, care and nurture of their children); Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535 (1942) (right to have children); Pierce v. Society of Sisters, 268 U.S. 510 (1925) (right of parents and guardians to direct the upbringing and education of their children).

be construed as inappropriate sexual contact with children, the City's ban is "fundamentally irrational and violates substantive due process." The court cannot agree.

The City argues that its ban of Mr. Brown from the parks is rationally related to its strong and legitimate interest in protecting children who visit its parks. The City says statistics and studies show that rate of recidivism among child molesters is high. The City claims Mr. Brown has engaged in suspicious behavior while at the park: he entered the park on a daily basis, "spending hours alone in his RV in the middle of the heat of the summer months. His use of binoculars to watch women and children on the beach was also suspicious." Deft. Mot., at 16. And the City notes that it isn't possible for its personnel to monitor the activities of Mr. Brown, a convicted child molester, on a minute-by-minute basis.

"It is evident beyond the need for elaboration that a State's interest in 'safeguarding the physical and psychological well-being of a minor' is 'compelling.'" New York v. Ferber, 458 U.S. 747, 756-757 (1982) (quoting Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 607 (1982)). And though the specific facts relied upon in Doe v. City of Lafayette differ from those here, Michigan City's ban of Mr. Brown, like the ban enacted by the City of Lafayette, is rationally related to its compelling interest in safeguarding children in its parks. "The City was not bound to wait until Mr. [Brown] again committed the crime of child molestation or

attempted child molestation in order to act." <u>Doe v. City of Lafayette</u>, 377 F.3d at 767 n.8.

Analysis of a substantive due process claim requires "inquiry [into] whether the individual has been subject to 'the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice.'" <u>Doe v. City of Lafayette</u>, 377 F.3d at 768 (*quoting* <u>Bank of Columbia v. Okely</u>, 17 U.S. (4 Wheat.) 235, 244 (1819)). Mr. Brown has not. "[T]he threshold question is whether the behavior of the government officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 848 n.8 (1998). The City's actions in banning Mr. Brown from its parks doesn't shock the contemporary conscience. The City is entitled to summary judgment on Mr. Brown's substantive due process claim.

CONCLUSION

Based on the foregoing, the court

    (a) DENIES Mr. Brown's motion for partial summary judgment [docket # 49]; and

    (b) GRANTS the motion of Michigan City for summary judgment [docket # 53].

The clerk is directed to enter judgment for defendant Michigan City on all claims of Mr. Brown's amended complaint.

SO ORDERED.

ENTERED:   September 19, 2005

    /s/ Robert L. Miller, Jr.
Chief Judge
United States District Court